1  David E. Bower (SBN 119546)
2  **MONTEVERDE & ASSOCIATES PC**
   600 Corporate Pointe, Suite 1170
3  Culver City, CA 90230
   Tel: (213) 446-6652
4  Fax: (212) 202-7880

5  *Counsel for Plaintiff*

6

7              **UNITED STATES DISTRICT COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9

10  PAUL S. DEBONIS,

11          Plaintiff,                    Civil Action No. _____

12      v.                                **CLASS ACTION COMPLAINT**

13  MULESOFT, INC., GREG SCHOTT,          **DEMAND FOR JURY TRIAL**
    MARCUS RYU, MARK BURTON,
14  MICHAEL CAPELLAS, STEVEN              **VIOLATIONS OF THE SECURITIES**
    COLLINS, YVONNE WASSENAAR,           **EXCHANGE ACT OF 1934**
15  GARY LITTLE, RAVI MHATRE, and
    ANN WINBLAD,
16
            Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

                              1

Plaintiff Paul S. DeBonis ("Plaintiff"), by and through his undersigned attorneys, brings this stockholder class action on behalf of himself and all other similarly situated public stockholders of MuleSoft, Inc. ("MuleSoft" or the "Company") against MuleSoft and the members of the MuleSoft's board of directors (the "Board" or the "Individual Defendants," and, together with MuleSoft, the "Defendants") for violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and Regulation M-A, 17 C.F.R. § 229.1015(b)(4), and to enjoin the expiration of a tender offer on a proposed transaction, pursuant to which MuleSoft will be acquired by salesforce.com, inc. ("Salesforce"), through its wholly owned subsidiary Malbec Acquisition Corp. ("Offeror") (the "Proposed Transaction"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1.     On March 20, 2018, MuleSoft and Salesforce issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell MuleSoft to Salesforce.

2.     Pursuant to the terms of the Merger Agreement, Offeror commenced a tender offer (the "Tender Offer") on April 2, 2018 to purchase all of the outstanding shares of MuleSoft common stock for consideration in the form of: (i) $36.00 in cash; and (ii) 0.0711 shares of Salesforce common stock (the "Offer Price"). Accordingly, the Offer Price has an implied value of $44.89 per share of MuleSoft common stock. The Proposed Transaction is valued at approximately $6.5 billion.

3.     On April 2, 2018, MuleSoft filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that MuleSoft stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) MuleSoft's and Salesforce's financial projections; (ii) the valuation analyses performed

by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of their fairness opinions; (iii) the fees paid to Goldman Sachs for the past work it has performed for MuleSoft; and (iv) the background process leading to the Proposed Transaction.

4.      As discussed below, the Offer Price appears inadequate, and the process by which Defendants consummated the Proposed Transaction is fundamentally unfair to Plaintiff and the other common stockholders of MuleSoft.

5.      The Tender Offer commenced on April 2, 2018 and is set to expire at 11:59 p.m. New York City Time on May 1, 2018 (the "Expiration Date").  It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the Expiration Date so they can properly determine whether to tender their shares.

6.      For the reasons, and as set forth in detail herein, Plaintiff seeks to enjoy the Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to MuleSoft stockholders, or in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of 14(d)(4), 14(e), and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.      This Court has jurisdiction over the Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  MuleSoft is

incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## **PARTIES**

10.     Plaintiff is, and has been at all times relevant hereto, a holder of MuleSoft Class A common stock.

11.     Defendant MuleSoft is a Delaware corporation with its principal executive offices located at 77 Geary Street, Suite 400, San Francisco, California 94108. MuleSoft's common stock is traded on the New York Stock Exchange under the ticker symbol "MULE".

12.     Defendant Greg Schott ("Schott") is, and has been at all relevant times, a director of MuleSoft. Schott has also served as MuleSoft's Chief Executive Officer ("CEO") since February 2009 and the Chairman of the Board since March 2009.

13.     Defendant Marcus Ryu ("Ryu") is, and has been at all relevant times, a director of MuleSoft.

14.     Defendant Mark Burton ("Burton") is, and has been at all relevant times, a director of MuleSoft.

15.     Defendant Michael Capellas ("Capellas") is, and has been at all relevant times, a director of MuleSoft.

16.     Defendant Steven Collins ("Collins") is, and has been at all relevant times, a director of MuleSoft.

17.     Defendant Yvonne Wassenaar ("Wassenaar") is, and has been at all relevant times, a director of MuleSoft.

18.     Defendant Gary Little ("Little") is, and has been at all relevant times, a director of MuleSoft.

19.     Defendant Ravi Mhatre ("Mhatre") is, and has been at all relevant times, a director of MuleSoft.

20.     Defendant Ann Winblad ("Winblad") is, and has been at all relevant times, a director of MuleSoft.

21.    The defendants identified in paragraphs 12 through 20 are collectively referred to herein as the "Individual Defendants" and/or the "Board," collectively with MuleSoft the "Defendants."

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of MuleSoft (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.    This action is properly maintainable as a class action because:

(a)    the Class is so numerous that joinder of all members is impracticable. As of March 16, 2018, there were approximately 92,690,735 shares of MuleSoft Class A common stock and 40,655,580 shares of MuleSoft Class B common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of MuleSoft will be ascertained through discovery;

(b)    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections 14(d)(4) and 14(e) of the Exchange Act;

ii.    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

(c)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g)    a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    Company Background and the Proposed Transaction**

24.    MuleSoft is a provider of one of the world's leading platforms for building application networks.

25.    The Company's mission is to help organizations change and innovate faster by making it easy to connect the world's applications, data and devices. With its API-led approach to connectivity, MuleSoft's industry-leading Anypoint Platform™ is enabling more than 1,200 organizations in approximately 60 countries to build application networks.

26.    On March 20, 2018, MuleSoft and Salesforce issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

### Salesforce Signs Definitive Agreement to Acquire MuleSoft

*MuleSoft provides one of the world's leading platforms for building application networks that connect enterprise apps, data and devices, across any cloud and on-premise*

*MuleSoft will power the new Salesforce Integration Cloud, which will enable all enterprises to surface any data—regardless of where it resides—to drive deep and intelligent customer experiences throughout a personalized 1:1 journey*

*More than 1,200 customers, including Coca-Cola, Barclays, Unilever and Mount Sinai, rely on MuleSoft to change and innovate faster, deliver differentiated customer experiences and increase operational efficiency*

**SAN FRANCISCO, March 20, 2018** Salesforce (NYSE: CRM), the global leader in CRM, and MuleSoft (NYSE: MULE), the provider of one of the world's leading platforms for building application networks, have entered into a definitive agreement under which Salesforce will acquire MuleSoft for an enterprise value of approximately $6.5 billion.

**Comments on the News:**

- "Every digital transformation starts and ends with the customer," said Marc Benioff, Chairman and CEO, Salesforce. "Together, Salesforce and MuleSoft will enable customers to connect all of the information throughout their enterprise across all public and private clouds and data sources—radically enhancing innovation. I am thrilled to welcome MuleSoft to the Salesforce Ohana."

- "With the full power of Salesforce behind us, we have a tremendous opportunity to realize our vision of the application network even faster and at scale," said Greg Schott, MuleSoft Chairman and CEO. "Together, Salesforce and MuleSoft will accelerate our customers' digital transformations enabling them to unlock their data across any application or endpoint."

**MuleSoft: One of the World's Leading Application Network Platforms**

MuleSoft provides one of the world's leading platforms for building application networks that connect enterprise apps, data and devices, across any cloud and on-premise. More than 1,200 customers, including Coca-Cola, Barclays, Unilever and Mount Sinai, rely on MuleSoft to change and innovate faster, deliver differentiated customer experiences, and increase operational efficiency.

**Acquisition to Accelerate Customers' Digital Transformations**

Together, Salesforce and MuleSoft will accelerate customers' digital transformations, enabling them to unlock data across legacy systems, cloud apps and devices to make smarter, faster decisions and create highly differentiated, connected customer experiences.

MuleSoft will continue to build toward the company's vision of the application network with Anypoint Platform, and MuleSoft will power the new Salesforce Integration Cloud, which will enable all enterprises to surface any data—regardless of where it resides—to drive deep and intelligent customer experiences throughout a personalized 1:1 journey.

As part of the world's #1 CRM company and fastest growing top 5 enterprise software company, MuleSoft will be able to accelerate its growth and deliver even more innovation to its customers at scale.

**Details Regarding the Proposed MuleSoft Acquisition**

The boards of directors of Salesforce and MuleSoft have unanimously approved the transaction.

Under the terms of the transaction, the MuleSoft acquisition consideration will be composed of $36.00 in cash and 0.0711 shares of Salesforce common stock per MuleSoft Class A and Class B common share, which represents a per share price for MuleSoft common shares of $44.89 based on the closing price of Salesforce common stock on March 19, 2018. The per share price represents a 36% premium over MuleSoft's closing share price on March 19, 2018.

Under the terms of the transaction, Salesforce will commence an exchange offer to acquire all of the outstanding shares of MuleSoft. The transaction is expected to close in the second quarter of Salesforce's fiscal year 2019, ending July 31, 2018, subject to the satisfaction of customary closing conditions, including the tender by MuleSoft stockholders of shares representing a majority of the MuleSoft common stock voting power, on a one-vote per share basis, and the expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Stockholders of MuleSoft owning approximately 30% of the outstanding shares have entered into tender and support agreements with Salesforce, pursuant to which they have agreed, among other things, and subject to the terms and conditions of the agreements, to tender their shares of MuleSoft common stock in the exchange offer. Following the successful completion of the exchange offer, MuleSoft shares not tendered in the exchange offer will be converted in a second step merger into the right to receive the same $36.00 in cash and 0.0711

shares of Salesforce common stock, paid in the exchange offer, per MuleSoft share.

Salesforce expects to fund the cash consideration with cash from its balance sheet and approximately $3.0 billion of proceeds from a combination of term loans and/or the issuance of debt securities. The relative mix of each will depend on prevailing market conditions. Salesforce has obtained a commitment from BofA Merrill Lynch for a $3.0 billion bridge loan facility, subject to customary conditions. This transaction is not subject to any financing condition.

BofA Merrill Lynch is serving as exclusive financial advisor to Salesforce. Goldman, Sachs & Co. is serving as exclusive financial advisor to MuleSoft.[1]

27.    The Offer Price MuleSoft stockholders stands to receive if the Proposed Transaction is consummated is unfair and inadequate because, among other things, the intrinsic value of the MuleSoft as a standalone entity is materially in excess of the amount offered given the Company's prospects for future growth and earnings.

28.    Notably, the Company has recently experienced exceptional growth, ***nearly tripling its total revenue*** between 2015 and 2017, from $110.3 million to $296.5 million.

29.    In addition, on May 4, 2017, the Company issued a press release announcing a 56% year-over-year increase in revenue for the first quarter of 2017.[2]  Revenue increased 57% year-over-year in the second quarter of 2017, and the same for third quarter 2017.

30.    On October 26, 2017, the Company announced its third quarter financial results, including total revenue of $77.6 million, a 57% increase from the third quarter of 2016.  In the press release, Defendant Scott was quoted as stating:

We delivered revenue well ahead of expectations in the third quarter, driven by robust market demand, strong sales execution, and healthy large deal activity. . . Across industries, disruption is being created by the convergence of major technology forces, such as mobile, cloud, big data, and the Internet of Things. Our Anypoint

---

[1]    MuleSoft, Inc., Current Report (Form 8-K), at Exhibit 99.1 (Joint Press Release issued by MuleSoft, Inc. and salesforce.com, inc., dated March 20, 2018) (March 20, 2018).

[2]    *MuleSoft Announces Financial Results for the First Quarter 2017*, MuleSoft, Inc. (May 4, 2017), *available at* https://investors.mulesoft.com/news/2017/05-04-2017-211852967.

1
2
3
4

Platform enables customers to build application networks to adapt to and capitalize on these trends. By making it easy to connect applications, data and devices in a standardized way, Anypoint Platform enables our customers to quickly deliver differentiated customer experiences, new revenue channels, and entirely new business models.[3]

5
6
7

31.    Subsequently, in a November 2, 2017 presentation[4], the Company touted its financial performance and growth prospects, noting its retention and model for long-term growth:

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25
26
27
28

---

[3]    *MuleSoft Announces Financial Results for the Third Quarter 2017*, MuleSoft (Oct. 26, 2017), *available at* https://investors.mulesoft.com/news/2017/10-26-2017-210822917.

[4]    *MuleSoft: Company Presentation*, MuleSoft (Nov. 2, 2017), *available at* https://investors.mulesoft.com/~/media/Files/M/MuleSoft-IR/documents/investor-deck-11-2-17.pdf.

## Driving Towards a Profitable Long-Term Model

| Non-GAAP % of Revenue (see Appendix for GAAP reconciliation) | 2014 | 2015 | 2016 | Q3-17 | Long-Term |
|---|---|---|---|---|---|
| Gross Margin | 71% | 71% | 74% | 73% | 80-85% |
| Research & Development | 29% | 20% | 16% | 21% | 14-16% |
| Sales & Marketing | 101% | 80% | 61% | 60% | 35-40% |
| General & Administrative | 20% | 18% | 15% | 14% | 8-10% |
| Operating Margin | -79% | -47% | -17% | -22% | 20-25% |

32.     On February 15, 2018, the Company announced its fourth quarter and fiscal year 2017 financial results.  For the quarter, total revenue was $88.7 million, a 60% increase from the fourth quarter of 2016.  Fiscal 2017 total revenue was $269.5 million, a 58% increase from fiscal 2016.  The Company also provided guidance for 2018, including total revenue between $87 million and $90 million for the first quarter of 2018 and total revenue between $405 million and $415 million for fiscal year 2018.  Defendant Scott commented on the successful quarter, stating:

> ***Robust market demand and strong sales execution enabled us to deliver fourth quarter and fiscal 2017 revenue well ahead of expectations. . .  We are excited about MuleSoft's growth opportunity and expect to reach $1 billion in total revenue in 2021.*** Our disruptive platform is addressing one of the largest areas of enterprise IT spend, and we're confident in our long-term strategy to become the de facto application network platform for our customers to become more agile and to transform their businesses.[5]

33.     Furthermore, even analysts have recognized MuleSoft's performance and prospects.

---

[5]   *MuleSoft Announces Financial Results for the Fourth Quarter and Fiscal Year 2017*, MuleSoft (Feb. 15, 2018), *available at* https://investors.mulesoft.com/news/2018/02-15-2018-212617465.

34.     On April 11, 2017, eight firms initiated coverage on MuleSoft, setting price targets of $22.00 to $30.00 per share. Within a year, price targets had increased: Goldman Sachs had raised its price target from $22.00 to $38.00 per share; Canaccord Genuity raised its price target from $24.00 to $33.00 per share; Oppenheimer raised its price target to $38.00 per share.

35.     On October 23, 2017, Richard Davis, an analyst with Canaccord Genuity, stated that he "likes [MuleSoft's] strategic positioning for [long-term] growth and believes the stock can outperform the overall market noting the valuation is not as expensive as it appears."[6]

36.     On January 8, 2018, Raimo Lenschow, an analyst with Barclays, stated that MuleSoft has a "healthy growth profile."[7]

37.     Accordingly, it is imperative that Defendants disclose the material information they have omitted from the Recommendation Statement, discussed in detail below, so that the Company's stockholders can properly exercise their corporate suffrage rights and make a fully informed decision concerning whether to tender their shares.

**II.    The Recommendation Statement is Materially Incomplete and Misleading**

38.     On March 30, 2018, the Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to MuleSoft stockholders.  The Recommendation Statement solicits the Company's stockholders to tender their shares in the Tender Offer.  Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision in connection with the Tender Offer.

---

[6]   *Canaccord Genuity Upgrades MuleSoft Inc. (MULE) to Buy*, StreetInsider.com (October 23, 2017), *available at* https://www.streetinsider.com/Analyst+Comments/Canaccord+Genuity+Upgrades+MuleSoft+Inc.+%28MULE%29+to+Buy/13410771.html.

[7]   *Barclays Upgrades MuleSoft Inc. (MULE) to Overweight*, StreetInsider.com (January 8, 2018), *available at* https://www.streetinsider.com/Analyst+Comments/Barclays+Upgrades+MuleSoft+Inc.+%28MULE%29+to+Overweight/13662304.html.

*Material Omissions Concerning MuleSoft's Financial Projections*

39.     First, the Recommendation Statement provides several non-GAAP financial metrics for MuleSoft, including EBIT, EBITDA, and Unlevered Free Cash Flows,[8] but fails to disclose the line-item projections for the specific metrics, adjustments, and/or inputs that are used to calculate these Non-GAAP financial measures or provide a reconciliation of the Non-GAAP measures to their most directly comparable GAAP financial measure, such as Net Income. Recommendation Statement 25-26.

40.     For example, the Recommendation Statement defines EBIT as "earnings attributable to MuleSoft, before interest expense and taxes," but fails to disclose MuleSoft's projected interest expense and taxes.

41.     Likewise, the Recommendation Statement defines EBITDA as "earnings attributable to MuleSoft, before interest expense, taxes, depreciation and amortization," but fails to disclose MuleSoft's projected interest expense, taxes, deprecation, and amortization.

42.     Similarly, the Recommendation Statement defines Unlevered Free Cash Flow as "cash flow before interest expense," but fails to disclose MuleSoft's projected cash flow and interest expense.

43.     Moreover, the Recommendation Statement defines Unlevered Free Cash Flow Less Stock Based Compensation as "Unlevered Free Cash Flow, less stock-based compensation," but fails to disclose MuleSoft's projected stock-based compensation.

44.     Furthermore, the Recommendation Statement also states that Goldman Sachs' considered "certain analyses prepared by the management of MuleSoft related to the expected utilization of certain net operating loss carryforwards, as approved for Goldman Sachs' use by MuleSoft (which we refer to as the "NOL forecasts")." *See* Recommendation Statement at 27.

---

[8]    Unlevered free cash flows are used to determine a company's enterprise value. The unlevered free cash flow allows investors to ascertain the operating value of a company independent of its capital structure. This provides a greater degree of analytical flexibility and allows for a clearer picture of the value of the company overall. For this reason, unlevered free cash flows are routinely used to value a company, especially in merger contexts.

45.     However, the Recommendation Statement fails to disclose MuleSoft's NOL forecasts for the years 2018 through 2027, despite the fact that they were utilized by Goldman Sachs' in their valuation analyses in support of their fairness opinion.

46.     The omissions from the above-referenced projections renders the financial projections included on pages 25 through 26 of the Recommendation Statement materially incomplete and misleading.  If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

47.     As a result, Defendants must provide MuleSoft stockholders with a reconciliation table of the non-GAAP measures to their most comparable GAAP measure or the line items used to calculate the non-GAAP financial measures disclosed in the Recommendation Statement in order to make the projections included on pages 25 through 26 of the Recommendation Statement not materially incomplete and misleading.

***Material Omissions Concerning Salesforce's Financial Projections***

48.     Second, the Recommendation Statement states that "certain internal financial analyses and forecasts for Salesforce prepared by its management, in each case as approved for Goldman Sachs' use by MuleSoft," but the Recommendation Statement fails to disclose any such projections and forecasts for Salesforce.  Recommendation Statement at 26.

49.     As discussed above, accurate financial information is necessary in order for a stockholder fairly to make a fully informed decision.  Similarly, information concerning the earnings picture of Salesforce is equally relevant to MuleSoft stockholders who are being asked to tender their shares in the Tender Offer.

50.     In fact, complete disclosure of the above-mentioned information omitted from the Recommendation Statement has a heightened importance to MuleSoft stockholders in light of the fact that the Offer Price is comprised of stock in another company: Salesforce.

*Material Omissions Concerning Goldman Sachs' Financial Analyses*

51.    The Recommendation Statement describes Goldman Sachs' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Goldman Sachs' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, MuleSoft's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman Sachs' fairness opinion in determining whether to tender their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to MuleSoft's common stockholders.

52.    With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 11.0% to 14.0%; (ii) the range of illustrative terminal values for MuleSoft; (iii) the inputs and assumptions underlying the perpetuity growth rates ranging from 2.0% to 4.0%; (iv) the estimates for MuleSoft's net operating losses for the years 2018 through 2027 (*i.e.*, the NOL forecasts); (v) the net debt of MuleSoft; and (vi) the number of fully diluted outstanding shares of MuleSoft common stock. *See* Recommendation Statement at 32.

53.    These key inputs are material to MuleSoft common stockholders, and their omission renders the summary of Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted

*cash flow value by tens if not hundreds of millions of dollars*.... This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

54.    Similarly, with respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Recommendation Statement fails to disclose: (i) the assumed amount of net debt; (ii) the projected year-end diluted shares of MuleSoft common stock outstanding; and (iii) the inputs and assumptions underlying the discount rate of 13.0%. *See* Recommendation Statement at 31-32.

55.    With respect to Goldman Sachs' *Selected Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Goldman in the analysis. *See* Recommendation Statement at 29-30. The omission of these multiples renders the summary of the analysis and the multiples calculated for MuleSoft and Salesforce misleading. A fair summary of Goldman Sachs' *Selected Companies Analysis* requires the disclosure of the individual multiples for each company; merely providing the 1-year and 2-year averages that a banker applied is insufficient, as MuleSoft's stockholders unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's value.

56.    With respect to the Goldman Sachs' *Selected Transactions Analysis*, the Recommendation Statement fails to disclose whether Goldman Sachs performed any type of benchmarking analysis for MuleSoft in relation to the target companies. *See* Recommendation Statement at 30.

57.     With respect to Goldman Sachs' *Premia Analysis*, the Recommendation Statement fails to disclose the number and identities of the transactions observed by Goldman Sachs in the analysis as well as the respective premiums paid in such transactions.  *See* Recommendation Statement at 31.  Instead, MuleSoft's stockholders are forced to blindly rely on Goldman Sachs'. Omission of the identities of the transactions observed and their respective premiums renders the summary of the analysis, the average one-day premiums paid, and the range of the implied present value per share of MuleSoft common stock misleading.  A fair summary of Goldman Sachs' *Premia Analysis* requires the disclosure of the identities of the transactions observed and their respective premiums; merely providing the number of transactions and the average one-day premium paid that a banker applied is insufficient, as MuleSoft's stockholders unable to assess whether the banker considered the appropriate transactions, or, instead, only considered certain transactions that resulted in unreasonably low premiums paid in order to drive down the Company's value and make the Offer Price appear more favorable.

### *Material Omissions Concerning Potential Conflicts of Interest*

58.     The Recommendation Statement also materially misleads MuleSoft stockholders as to the potential conflicts of interest faced by MuleSoft management and the Board.

59.     In particular, the Recommendation Statement fails disclose sufficient information regarding fees received from past dealings between Goldman Sachs and MuleSoft.

60.     Specifically, the Recommendation Statement states "Goldman Sachs has provided certain financial advisory and/or underwriting services to MuleSoft and/or its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as an underwriter on MuleSoft's initial public offering in March 2017."  Recommendation Statement at 33.

61.     Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4).  Such information is also material to MuleSoft stockholders.  Indeed, it is imperative for stockholders to be able to understand what factors might influence the financial advisor's analytical efforts.  A financial advisor's own proprietary financial

interest in a proposed merger must be carefully considered in assessing how much credence to give its analysis.  A reasonable stockholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the stockholder, might have.  Especially when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than only approving a deal at truly fair price to stockholders.  The complete omission of the Goldman Sachs' received for its past work performed for MuleSoft renders the Recommendation Statement materially incomplete and misleading.

62.     The omission of this information renders the statements in the *Opinion of MuleSoft's Financial Advisor* and *General* sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

63.     In sum, the omission of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Expiration Date, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to tender their shares in the Tender Offer, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act**

**and 17 C.F.R. § 244.100 Promulgated Thereunder)**

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

66.     Defendants have issued the Recommendation Statement with the intention of soliciting MuleSoft stockholders to tender their shares.  Each of the Defendants reviewed and

authorized the dissemination of the Recommendation Statement, which fails to provide material information regarding MuleSoft's and Salesforce's financial projections, the valuation analyses performed by Goldman Sachs, and the potential conflicts of interest faced by MuleSoft management and the Board.

67.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants acted knowingly or negligently, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholder although they could have done so without extraordinary effort.

68.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

69.     Defendants knowingly or negligently omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

70.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date for the Tender Offer.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act**

**and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

71.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.    Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

73.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.   Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

74.    SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

75.    In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

76.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

77.     Defendants knowingly or negligently omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

78.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

79.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

80.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

81.     The Individual Defendants acted as controlling persons of MuleSoft within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of MuleSoft, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

82.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement by Plaintiff to be misleading prior to the date the Recommendation Statement was issued, and had the ability to prevent the issuance of the false and misleading statements or cause the statements to be corrected.

83.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants that MuleSoft stockholders tender their shares in the Tender Offer.  They were thus directly involved in preparing this document.

84.    In addition, as the Recommendation Statement sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

85.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

86.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

87.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from closing the Tender Offer or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury on all issues so triable.

DATED: April 16, 2018

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
mschreiner@monteverdelaw.com

*Counsel for Plaintiff*

Respectfully submitted,
*/s/ David E. Bower*
 David E. Bower

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Counsel for Plaintiff*